# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | ) |
| | ) No. 99 CR 269 |
| **JOHN P. MACCHIONE,** *et al.* | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

In 2001, a jury convicted John Macchione ("Macchione") of one count of mail fraud and three counts of tax evasion in connection with his participation in a scheme to defraud a company called Uno-Ven. He was sentenced to thirty-seven months' imprisonment, and ordered to pay restitution to Uno-Ven in the amount of $1,147,603. As part of its continuing effort to enforce the restitution order, the government moved the court in March 2009 to issue an order requiring the Pension Fund and the Annuity Fund of the International Association of Heat and Frost Insulators, Local 17 to turn over certain benefits belonging to Macchione.[1] Specifically,

---

[1] The citation to discover assets originally named the International Association of Heat and Frost Insulators, Local 17 as the respondent. However, the citation was answered by the Pension Fund of the International Association of Heat and Frost Insulators, Local 17 ("the Pension Fund"), and the Annuity Fund of the International Association of Heat and Frost Insulators, Local 17 ("the Annuity Fund")(together, "the Funds"). After receiving the Funds' answer, the government corrected its turnover motion accordingly.

the government asked that the Pension Fund be ordered to turn over monthly payments of $2,510, and that the Annuity Fund be ordered to turn over a lump sum payment of $157,506, at the time that these sums became due and payable to Macchione.

It later became clear that, under the terms of his pension plan, Macchione would become eligible to receive monthly payments only upon reaching sixty-two years of age. Under the annuity plan, however, a participant is eligible to receive benefits after fifty-five years of age. Since Macchione was aged fifty-nine in May 2009, the government sought to amend its motion to require only that the Annuity Fund be ordered to turn over the $157,506 lump sum payment. As for the pension payments, the government asked that the Pension Fund be ordered to spread the government's lien of record and prohibit any distribution until further order of the court. First Am. Mot. for Turnover Order at 4 (Doc. 381).

Still later, the Funds responded to the government's amended motion for a turnover order. While the Pension Fund did not oppose entry of the order, the Annuity Fund raised two objections: (1) that the annuity can be distributed only when a participant dies, is disabled, or elects to retire; and (2) that no lump sum benefit can be paid without the consent/waiver of the participant's spouse. Citation Respondents' Resp. to First Am. Mot. for Turnover Order (Doc. 401) ¶¶ 1, 3.

Rather than disputing the Annuity Fund's position, the government requested that, as with the Pension Fund, the Annuity Fund be ordered to spread the government's lien of record so as to prevent any distribution of Macchione's assets until further order of the court. Sur-Reply in Support of Amended Mot. for Turnover Order at 2 (Doc. 419). Thus, in light of the subsequent amendments to its original motion, the government in effect no longer seeks a turnover order; instead, it asks that, for the time being, the government's lien on both Macchione's pension and annuity benefits be spread of record.

Throughout these proceedings, Macchione has opposed the government's motion on several grounds. His chief arguments are: (1) that the government's motion is untimely and (2) that, as a matter of law, the pension and annuity benefits the government seeks are not subject to turnover. In addition, he raises (3) an inchoate set of arguments that appear to be directed more specifically at the request in the government's amended motion that its lien be spread of record. Lastly, Joanne Macchione objects to the entry of the turnover order on the ground that, as Macchione's spouse, she is entitled to the pension and annuity payments sought by the government.

For the reasons discussed below, I reject Macchione's arguments and grant the government's amended motion for turnover order to the extent that it asks that its lien on the pension and

annuity benefits be spread of record. The parties have not yet addressed the legal and factual issues concerning Joanne Macchione's possible entitlement to Macchione's annuity and pension payments. The parties are therefore directed to brief the latter issues. Until then, I defer issuing any definitive ruling as to whether the assets in question must be turned over in fulfillment of Macchione's restitution obligation.

**II.**

I first address Macchione's claim that the government's turnover motion is untimely. His argument is based on Illinois Supreme Court Rule 277, which describes the procedures to be followed where supplementary proceedings are brought to enforce judgments. In relevant part, the rule provides:

> A proceeding under this rule continues until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment, but terminates automatically 6 months from the date of (1) the respondent's first personal appearance pursuant to the citation or (2) the respondent's first personal appearance pursuant to subsequent process issued to enforce the citation, whichever is sooner. The court may, however, grant extensions beyond the 6 months, as justice may require. Orders for the payment of money continue in effect notwithstanding the termination of the proceedings until the judgment is satisfied or the court orders otherwise.

ILCS S. Ct. Rule 277(f).

Since the answer to the citation was filed on January 31, 2007, and the turnover motion was filed on March 10, 2009,

Macchione contends that the six-month period has expired, and that the government's motion is therefore time-barred. I disagree.

As Rule 277(f)'s plain language makes clear, extensions may be granted "as justice may require." ILCS S. Ct. Rule 277(f). Even assuming that the motion were untimely, an extension would be warranted under the circumstances of this case.[2] As courts have explained, Rule 277(f)'s "automatic termination deadline seeks to 'force judgment creditors to move promptly to collect their judgments, so that property does not remain encumbered by liens indefinitely' and to avoid undue harassment of a judgment debtor or a third party." *Windcrest Development Co., Inc. v. Giakoumis*, 834 N.E.2d 610, 614 (Ill. App. Ct. 2005)(quoting *King v. Ionization Intern., Inc.*, 825 F.2d 1180, 1188 (7th Cir. 1987)). These concerns are not implicated here. There is no reason to think that the liens in question might indefinitely encumber Macchione's assets; nor, despite Macchione's protestations to the contrary, is there any evidence of harassment in this case. The government is simply seeking to effectuate the restitution order to which

---

[2] Notably, the language of the Rule does not require that the request for an extension be made prior to the expiration of the six-month period. *See, e.g.*, *State Bank of India v. Commercial Steel Corp.*, No. 97 C 1150, 2001 WL 423001, at *3 n.7 (N.D. Ill. April 24, 2001) (Keys, Mag. J.).

Macchione is undeniably subject.  Indeed, the government is *required* to seek restitution under the Mandatory Victims Restitution Act of 1996 ("MVRA").  18 U.S.C. § 3663A ("Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense."); see also *United States v. Newman*, 144 F.3d 531 (7th Cir. 1998)("As the [MVPA's] name suggests, courts no longer have discretion in awarding restitution to the victims of a defendant's criminal activity . . . . The language of the new Act speaks in terms of the restitution that courts 'shall order' rather than that which they 'may order.'").

This also is not a case in which extending Rule 277(f)'s six-month deadline would result in injustice or prejudice.  *Laborers' Pension Fund v. Pavement Maintenance, Inc.*, 542 F.3d 189, 194 (7th Cir. 2008) (discussing injustice and prejudice as relevant concerns when determining whether to extend Rule 277(f)'s deadline).  This is especially apparent in light of the much more limited relief the government now seeks in its amended motion: the government no longer asks that any funds be turned over at this time; on the contrary, the motion seeks precisely to prevent the benefits from being disbursed.  Given that Macchione himself is not even eligible

to receive certain of the benefits at this time, it is difficult to see how granting the government an extension would be prejudicial to him.

Thus, to the extent that the proceedings at issue have lasted beyond Rule 277(f)'s six-month time limit, an extension is plainly warranted, and Macchione's untimeliness argument fails.

## III.

Macchione next argues that, as a matter of law, the pension and annuity benefits sought by the government are not subject to turnover. Macchione frames his argument in terms of what he calls a "schizophrenic dilemma:" either the restitution order is criminal in nature or it is civil in nature. If it is criminal, the restitution order violates the Constitution's *Ex Post Facto* Clause, because the MVPA, on which the order was based, was enacted in 1996, after Macchione's criminal activity took place. On the other hand, if the order is civil in nature, Macchione claims that it runs afoul of the so-called "non-alienation provisions" in the Tax Code and the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). Thus, whether it is regarded as criminal or civil in character, the restitution order (and *a fortiori* any turnover order entered pursuant to the restitution order) is improper.

Unfortunately for Macchione, neither limb of his dilemma holds up under scrutiny. First, this Circuit has already addressed, and

squarely rejected, the same *ex post facto* argument that Macchione advances here. *United States v. Newman*, 144 F.3d 531 (7th Cir. 1998). Like Macchione, the defendant in *Newman* argued that his restitution order, imposed pursuant to the MVPA, violated the Constitution's *Ex Post Facto* Clause because the criminal activity he engaged in took place before the MVPA's enactment. *Id.* at 538. The court observed that in order to prove an *ex post facto* claim, the defendant must "show both that the challenged law operates retroactively (i.e., applies to criminal conduct occurring before its enactment) and that it increases the punishment for that criminal conduct." *Id.* Although the court agreed that the law operated retroactively, it rejected Newman's claim that it increased the punishment for his criminal conduct. *Id.* This was because, as the court explained at length, a restitution order does not constitute criminal punishment. *Id.* at 538-41.

*Newman* clearly forecloses Macchione's *ex post facto* argument. At times, Macchione appears to acknowledge this and to suggest that the precedent simply be ignored. However, Macchione also seems intent on trying to distinguish his case from *Newman* by providing an additional reason why his restitution order should be viewed as criminal punishment. In particular, he notes that Uno-Ven, the victim to whom he was originally required to pay restitution, is now defunct. As a result, he claims, there is effectively no longer any victim in the case. Macchione goes on to suggest that

any restitution payments he may have made after Uno-Ven's demise were pocketed by the government. According to Macchione, when payments are made to the government as opposed to an individual victim, the payments essentially amount to a criminal fine. Hence, he claims, his restitution order should be viewed as a criminal fine.

This argument is refuted by the very cases Macchione cites in support of it: *United States v. Bach*, 172 F.3d 520 (7th Cir. 1999), and *Matter of Towers*, 162 F.3d 952 (7th Cir. 1998). In *Bach*, the Seventh Circuit reaffirmed its holding in *Newman* that the MVRA does not violate the *Ex Post Facto* Clause, explaining once again that restitution ordered pursuant to the statute is civil, not criminal. In the course of its discussion, the court went on to observe: "It would be different if the order of restitution required the defendant to pay the victims' losses not to the victims but to the government *for its own use and benefit*; then it would be a fine, which is, of course, traditionally a criminal remedy." *Id*. at 523 (emphasis added). *Bach* in no way holds that making restitution payments to the government, without more, transforms an otherwise civil penalty into a criminal fine. Rather, *Bach* suggests that it is only when payments to the government are used by the government *for its own benefit* that the payments take on the character of a criminal sanction.

This point is made even more explicitly in *Towers*. Towers had violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 to 505/12, and had been required to pay $210,000 in restitution to victims of his fraudulent scheme. When Towers later filed for bankruptcy, the State sought to prevent the restitution order from being discharged, relying on 11 U.S.C. § 523(a)(7), which precludes the discharge of a debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit." 11 U.S.C. § 523(a)(7). The court thus addressed whether the $210,000 restitution order fell within this definition, and, in particular, whether the debt was "for the benefit of a governmental unit." The State argued that the debt was for the benefit of the government because the restitution order required Towers to pay the $210,000 to the Illinois Attorney General. The court rejected that argument, explaining that even though the money was paid to the government, the funds would eventually be distributed to the victims of the fraud. Consequently, the payments were for the victims' benefit, not the government's. *Id.* at 955.

Here, as in *Tower*, the restitution funds are not being used for the government's purposes. Indeed, after Uno-Ven became defunct, the government sought to ensure that payments formerly made to Uno-Ven would be received by PDV Midwest Refining LLC ("PDV"), a subsidiary of CITGO corporation that purchased Uno-Ven's

-10-

assets.  In other filings before the court, Macchione has maintained that PDV should not be regarded as a victim in the case. His arguments have been unpersuasive and the issue has been decided against him.  *See* Minute Order, June 2, 2009 (Doc. 390).  I will not revisit that issue.

Likewise, the second horn of Macchione's dilemma -- namely, that the restitution order violates the anti-alienation provisions of the Tax Code and the ERISA statute -- is also easily answered. Macchione argues that pension and annuity benefits constitute a "qualified trust" under the Tax Code, and that under § 401 of the Code, such benefits "may not be assigned or alienated."  26 U.S.C. 401(a)(13)(A).  Macchione also cites section 401(a)(3) of the ERISA statute says that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

These non-alienation provisions, however, are trumped by 18 U.S.C. § 3613(a).  Section 3613(a) provides:

> (a) Enforcement.--The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law.  Notwithstanding any other Federal law (including section 207 of the Social Security Act), a judgment imposing a fine may be enforced against all property or rights to property of the person fined, except that--
>
> (1) property exempt from levy for taxes pursuant to section 6334(a)(1), (2), (3), (4), (5), (6), (7), (8), (10), and (12) of the Internal Revenue Code of 1986 shall be exempt from enforcement of the judgment under Federal law;
> (2) section 3014 of chapter 176 of title 28 shall not apply to enforcement under Federal law; and

> (3) the provisions of section 303 of the Consumer Credit Protection Act (15 U.S.C. 1673) shall apply to enforcement of the judgment under Federal law or State law.

18 U.S.C. § 3613(a)(1)-(3).[3]

The statute makes clear that it is subject only to those exceptions that it expressly enumerates. Since the non-alienation provisions are plainly not among the exceptions, it is of no use for Macchione to appeal to either provision in attempting to resist his restitution order.[4]

The Seventh Circuit's recent decision in *United States v. Hosking*, 567 F.3d 329 (7th Cir. 2009), makes this plain. *Hosking* specifically held that § 3613 supersedes § 401 of the Tax Code. *Id.* at 334. And while *Hosking* did not state explicitly that § 3613

---

[3] Although subsection (a) speaks of enforcing a judgment imposing a "fine," subsection (f) of the statute explains that "all provisions of this section are available to the United States for the enforcement of an order of restitution." 18 U.S.C.A. § 3613(f). Hence, the appearance of the word "fine" in the statute in no way implies that in relying on § 3613, the order the government seeks to enforce is somehow criminal in nature. *See also United States v. Hosking*, 567 F.3d 329 (7th Cir. 2009) (treating order government sought to enforce under § 3613 as one for restitution rather than a criminal fine).

[4] To be sure, 26 U.S.C. § 6334(a)(6) makes "[c]ertain annuity and pension payments" exempt from levy. But that provision refers to annuity or pension payments "under the Railroad Retirement Act, benefits under the Railroad Unemployment Insurance Act, special pension payments received by a person whose name has been entered on the Army, Navy, Air Force, and Coast Guard Medal of Honor roll, and annuities based on retired or retainer pay under chapter 73 of title 10 of the United States Code." 26 U.S.C. § 6334(a)(6) (citation omitted).

trumps *ERISA*'s anti-alienation provision, in reaching its conclusion regarding the Tax Code's provision, the court expressly relied on the reasoning of decisions holding that § 3613 does in fact supersede the ERISA provision. *See Hosking*, 567 F.3d at 334-35 (citing with approval the analyses in *United States v. Novak*, 441 F.3d 819, 823 (9th Cir. 2006) and *United States v. Irving*, 452 F.3d 110, 126 (2d Cir. 2006)).

For these reasons, I reject Macchione's contention that entry of a turnover order is barred either by *ex post facto* concerns or by statutory non-alienation provisions.

**IV**.

In addition to the foregoing arguments, Macchione purports to raise a slew of others. These can be found scattered throughout his various response briefs and sur-replies. Because none of these arguments is sufficiently developed, they are deemed forfeited. Thus, in Macchione's response to the government's initial motion for turnover order, he purports to "reassert as bases for not granting the motion of US the reasons set forth" in certain of his earlier filings. Resp. to Mot. for Turnover Order ¶ 7. He alludes in particular to his contention that the government is "not a proper judgment creditor" under Illinois law or federal law. *Id.* However, rather than presenting the argument or explaining it any further, Macchione refers the court to his "responses to the other citations and motions . . . proffered in the case in chief,

including the supplemental proceedings thereto." *Id.* He then goes on to list no fewer than fifteen previous filings in which these additional considerations can be found.

Merely referencing arguments presented elsewhere is not sufficient to put those arguments before the court for purposes of the instant motion. As litigants have often been reminded, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. Especially not when the brief presents a passel of other arguments . . . . Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)."); *cf. Zurich Capital Markets Inc. v. Coglianese*, 332 F. Supp. 2d 1087, 1100 n.2 (N.D. Ill. 2004) (refusing to consider arguments incorporated by reference from another case).

Similarly, in his "post-sur-reply" to the government's amended motion, Macchione perfunctorily announces several further claims.[5]

---

[5] In addition to being insufficiently developed, these claims are also likely forfeited because they were raised for the first time in Macchione's "post-sur-reply," thus leaving the government with no opportunity to respond to them. *Cf. Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992) (argument was waived "as the plaintiff failed to raise it until his reply brief, leaving the defendants no chance to respond").

Putting aside the fact that they have been forfeited, it is clear that each of the arguments fails on the merits. First, Macchione contends that liens are to be placed on existing property, not contingent future interests in property, and that the "obvious purpose of US [sic] is to obtain a priority over the rights of others upon the event which may result in future payout by Union." Post-Sur-Reply ¶ 2. This, he claims, "has been declared unavailing under Illinois case law." However, the case he cites -- *Chicago Federal Sav. and Loan Ass'n v. Cacciatore*, 178 N.E.2d 888 (Ill. App. Ct. 1961) -- provides no support whatsoever for his claim. *Cacciatore*'s facts simply bear no resemblance to the facts present here, and the opinion never makes any general pronouncements of the kind for which Macchione cites it.

Next, Macchione claims that 735 ILCS 1402 does not allow a lien to be spread of record against the Pension and Annuity Funds. Post Sur-Reply ¶ 3. In support of this contention, he cites a decision of the Illinois Court of Appeals, *Podvinec v. Popov*, 639 N.E.2d 613, 615 (Ill. App. Ct. 1994). Unfortunately for Macchione, that decision was subsequently reversed by the Illinois Supreme Court. *Podvinec v. Popov*, 658 N.E.2d 433, 434 (Ill. 1995). The *Podvinec* litigation centered on whether a court had the authority to create a "judicial lien" on certain assets that Popov stood to gain in a separate proceeding, and whether the court could spread the record of the lien in that suit. While the appellate court had

held that the trial court lacked the power to do so, the Illinois Supreme Court disagreed. In particular, the court held that "service of the citation to discover assets on Popov created a general lien in favor of Podvinec on the property of Popov," and that the "circuit court judge in the *Popov* action had the power to spread the lien of record." *Id.* at 435.

Finally, Macchione contends that "[l]iening a contingent future interest which comes to fruition only upon John's demise to his surviving spouse, or other heirs is precluded by that provision of law which limits restitution to payment by the person against whom the order of restitution is entered and does not survive his demise per 18 USC 3614(b)." Post-Sur-Reply 4. Once again, this claim is completely unsupported. The statute Macchione sites contains no such limitation. Rather, 18 U.S.C. 3614(b) addresses resentencing upon a party's failure to pay a fine or make restitution.[6]

---

[6] Specifically, the statute provides:

(a) Resentencing.--Subject to the provisions of subsection (b), if a defendant knowingly fails to pay a delinquent fine or restitution the court may resentence the defendant to any sentence which might originally have been imposed.

(b) Imprisonment.--The defendant may be sentenced to a term of imprisonment under subsection (a) only if the court determines that–

    (1) the defendant willfully refused to pay the delinquent fine or had failed to make sufficient bona fide efforts to pay the fine;

Hence, like Macchione's arguments based on the *Ex Post Facto* Clause and statutory alienation provisions, the arguments alluded to in his post-sur-reply are without merit.

**CONCLUSION**

For the reasons explained above, Macchione's benefits under the Pension Fund and the Annuity Fund are not exempt from execution by virtue either of the statutory non-alienation provisions he cites, or the Constitution's *Ex Post Facto* Clause. Nor I am persuaded by any of his other arguments against the turnover order. As a result, the government's amended motion for a turnover order is granted insofar as it requests that the Pension Fund and Annuity Fund be required to spread the government's lien of record and that the Funds be prohibited from any distribution of Macchione's assets until further order of this Court.

This leaves as the only issue to be decided the extent, if any, to which Joanne Macchione is entitled to the pension and annuity benefits sought in the turnover order. The parties are therefore directed to submit briefing to the Court on this issue

---

or

(2) in light of the nature of the offense and the characteristics of the person, alternatives to imprisonment are not adequate to serve the purposes of punishment and deterrence.

18 U.S.C. § 3614(a)-(b).

(and only this issue) in accordance with the briefing schedule indicated in the minute order.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: October 1, 2009